UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL W.,[1] <br><br>　　　　　　　　Plaintiff, <br><br>　　v. <br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>　　　　　　　　Defendant. | Case No. EDCV 22-135-KK <br><br><br>MEMORANDUM AND ORDER |

　　　　Plaintiff Michael W. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title XVI Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

///

///

///

---

[1] 　　Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# I.
# **PROCEDURAL HISTORY**

On January 16, 2020, Plaintiff protectively filed an application for SSI alleging a disability onset date of December 18, 2014.  Administrative Record ("AR") at 183-89; see also id. at 15, 67, 87.  Plaintiff's application was denied initially on July 31, 2020, id. at 53-67, 90-94, and upon reconsideration on December 4, 2020, id. at 68-87, 98-104.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  Id. at 105-10.

On September 17, 2021, Plaintiff appeared with counsel and testified at a telephonic hearing before the assigned ALJ.  Id. at 30-52.  A vocational expert also testified at the hearing.  Id. at 46-51.  On October 6, 2021, the ALJ issued a decision denying Plaintiff's application.  Id. at 12-29.

Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision.  Id. at 178-80.  On December 9, 2021, the Appeals Council denied Plaintiff's request for review.  Id. at 1-6.

On January 23, 2022, Plaintiff filed the instant action.  Dkt. 1, Compl.

On July 25, 2022, Plaintiff filed a Memorandum in Support of the Complaint. Dkt. 17.  On September 28, 2022, the Commissioner filed a Memorandum in Support of the Answer.  Dkt. 20.  On October 12, 2022, Plaintiff filed a Reply.  Dkt. 21.

The matter thus stands submitted.

# II.
# **PLAINTIFF'S BACKGROUND**

Plaintiff was born on July 9, 1971, and his alleged disability onset date is December 18, 2014.  AR at 183.  He was forty-three years old on the alleged disability onset date and fifty years old at the time of the hearing before the ALJ.  Id. at 30, 183. Plaintiff has an eleventh-grade education.  Id. at 36, 273.  He alleges disability based on protruding discs in his back, high blood pressure, depression, numbness in his legs, and acid reflux.  Id. at 207.

# III.

## **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[2]
4. Is the claimant capable of performing work he has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

---

[2] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for his verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

**A.  STEP ONE**

At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since January 16, 2020, the application date[.]" AR at 17.

**B.  STEP TWO**

At step two, the ALJ found Plaintiff "has the following severe impairment: spondylosis of the lumbar spine[.]" Id.

**C.  STEP THREE**

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. at 19.

**D.  RFC DETERMINATION**

The ALJ found Plaintiff has the following RFC:

> [T]o perform light work as defined in 20 CFR 416.967(b) except [Plaintiff] is limited to lifting or carrying no more than 20 pounds occasionally and 10 pounds frequently; standing or walking for six hours each in an eight-hour workday; and sitting for six hours in an eight-hour workday. [Plaintiff] is limited to occasional climbing ramps and stairs,

1     balancing, stooping, kneeling, crouching, and crawling; but never

2     climbing ladders, ropes, or scaffolds. [Plaintiff] must avoid concentrated

3     exposure to hazardous conditions.

4 Id. at 20.

5 **E.  STEP FOUR**

6     At step four, the ALJ found Plaintiff "is unable to perform any past relevant

7 work[.]" Id. at 24.

8 **F.  STEP FIVE**

9     At step five, the ALJ found "there are jobs that exist in significant numbers in

10 the national economy that [Plaintiff] can perform," including the jobs of "assembler,"

11 "routing clerk," and "office helper." Id. at 25.

12     The ALJ, therefore, concluded Plaintiff "has not been under a disability, as

13 defined in the Social Security Act, since January 16, 2020, the date the application was

14 filed[.]" Id. at 26.

## V.

## PLAINTIFF'S CLAIMS

17     Plaintiff presents two disputed issues: (1) whether the ALJ properly considered

18 Plaintiff's subjective complaints of physical impairment, and (2) whether the ALJ

19 erred in finding Plaintiff's mental impairment non-severe and failing to incorporate

20 mental limitations into Plaintiff's RFC.[3] Dkt. 17 at 2-3.

## VI.

## STANDARD OF REVIEW

23     Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's

24 final decision to deny benefits. The ALJ's findings and decision should be upheld if

25 they are free of legal error and supported by substantial evidence based on the record

---

[3]     The Court finds the first issue dispositive of this matter and thus declines to address the remaining issue. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

1 as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d
2 742, 746 (9th Cir. 2007).

3       "Substantial evidence" is evidence that a reasonable person might accept as
4 adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th
5 Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To
6 determine whether substantial evidence supports a finding, the reviewing court "must
7 review the administrative record as a whole, weighing both the evidence that supports
8 and the evidence that detracts from the Commissioner's conclusion." Reddick, 157
9 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir.
10 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific
11 quantum of supporting evidence'" (citation omitted)). "If the evidence can reasonably
12 support either affirming or reversing," the reviewing court "may not substitute its
13 judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Terry
14 v. Saul, 998 F.3d 1010, 1013 (9th Cir. 2021) ("Importantly, even where the evidence
15 of record is susceptible to more than one rational interpretation, we must defer to the
16 Commissioner's interpretation of the evidence." (internal quotation marks and
17 citation omitted)).

18       The Court may review only the reasons stated by the ALJ in her decision "and
19 may not affirm the ALJ on a ground upon which [s]he did not rely." Orn v. Astrue,
20 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered
21 harmless if it is "clear from the record" that the error was "inconsequential to the
22 ultimate nondisability determination." Robbins v. Soc. Sec. Admin., 466 F.3d 880,
23 885 (9th Cir. 2006) (citation omitted).
24 ///
25 ///
26 ///
27 ///
28 ///

6

# VII.
# THE ALJ FAILED TO PROPERLY CONSIDER PLAINTIFF'S SUBJECTIVE COMPLAINTS

## A. RELEVANT FACTS

### 1. Plaintiff's Statements Regarding His Symptoms

At the hearing before the ALJ on September 17, 2021, Plaintiff testified regarding the symptoms caused by his physical impairments. He stated his back hurts "all the time, 24 hours a day" and he experiences "numbness" that "goes from one side to the other." AR at 39. Plaintiff indicated he lived with his mother and stepfather at the time of the hearing. Id. at 36. He explained he "can't really do anything for [him]self like [he] used to" because his back pain makes it "hard for [him] to move around." Id. at 39. Plaintiff testified he sometimes needs help getting out of bed, walking to the bathroom, or entering and exiting the bathtub. Id. According to Plaintiff, he went to the emergency room "a couple of times" and the ambulance "had to come get [him] from home because [he] couldn't get up." Id. at 41. Plaintiff further testified he does not cook, shop, or do house or yard work. Id. at 42. He stated he is "at home every day, all day" and spends "[f]our to five hours" sleeping during the day. Id. at 41-42. Plaintiff estimated he can sit for twenty minutes at a time, stand for "five minutes, maybe," and lift "[m]aybe five pounds." Id. at 43-44. With respect to his treatment, Plaintiff reported that injections "helped for a limited time." Id. at 40. He also testified that radiofrequency ablation "worked for a while," but the pain would subsequently return. Id. at 46.

Previously, on April 2, 2020, Plaintiff completed a function report regarding the effect of his symptoms on his daily activities. Id. at 214-21. In the function report, Plaintiff indicated he was "homeless" and lived with family, with friends, or "wherever" he could. Id. at 214. He reported experiencing pain "all day" and being unable to stand for "long." Id. Plaintiff further reported he could not "bend over to t[ie his] shoes" and could not "wash [his] feet sometimes." Id. at 215. He stated he

1 did not do "ha[lf] the stuff [he] use[d] to because of [his] back," which "just go[e]s out
2 at anytime." Id. at 218.

### 2. The ALJ's Decision

The ALJ appears to have rejected Plaintiff's subjective complaints of physical impairment on the grounds that (1) Plaintiff's symptoms improved with treatment, and (2) his treatment did not involve surgical invention. AR at 20-22.

## B. APPLICABLE LAW

If "the record establishes the existence of a medically determinable impairment that could reasonably give rise to the reported symptoms, an ALJ must make a finding as to the credibility[4] of the claimant's statements about the symptoms and their functional effect." Robbins, 466 F.3d at 883 (citations omitted). The ALJ's determination regarding the plaintiff's subjective complaints must be supported by "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted).

The ALJ is required to engage in a two-step analysis. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014)). If the claimant meets the first step, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." Id. (quoting Garrison, 759 F.3d at 1014-15). "The ALJ must state specifically which symptom testimony is not credible and

---

4   Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from Social Security Administration "sub-regulatory policy" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [Social Security Administration] regulatory language regarding symptom evaluation." See SSR 16-3p, 2017 WL 5180304, at *1-2, *10-11.

8

1  what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273,
2  1284 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir.
3  2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for
4  rejecting a claimant's testimony by simply reciting the medical evidence in support of
5  his or her residual functional capacity determination").

6       "If the ALJ's credibility finding is supported by substantial evidence, [a court]
7  may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir.
8  2002). However, an ALJ's failure to give specific, clear, and convincing reasons to
9  reject the claimant's testimony regarding the severity of the symptoms is not harmless,
10 because it precludes the Court from conducting a meaningful review of the ALJ's
11 reasoning. Brown-Hunter, 806 F.3d at 489.

12 **C.   ANALYSIS**

13      Here, the ALJ found Plaintiff's "medically determinable impairments could
14 reasonably be expected to cause [his] alleged symptoms." AR at 21. Hence, because
15 there is no evidence of malingering, the ALJ was required to provide "specific, clear,
16 and convincing reasons" to properly reject Plaintiff's subjective complaints of physical
17 impairment. Trevizo, 871 F.3d at 679. As discussed below, however, the ALJ failed
18 to do so.

19      **1.   Improvement with Treatment**

20      The ALJ relied on her finding that Plaintiff experienced improvement with
21 treatment in rejecting Plaintiff's subjective complaints of physical impairment. See
22 AR at 21-22. Plaintiff's improvement with treatment, however, does not constitute a
23 convincing reason supported by substantial evidence for rejecting his subjective
24 complaints.

25      The Ninth Circuit has held that "[c]ycles of improvement and debilitating
26 symptoms are a common occurrence, and in such circumstances it is error for an ALJ
27 to pick out a few isolated instances of improvement over a period of months or years
28 and to treat them as a basis for concluding a claimant is capable of working."

Garrison, 759 F.3d at 1017 (citing Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001)); see also Guerra v. Berryhill, 448 F. Supp. 3d 1115, 1125 (D. Nev. 2020) (finding principles of Garrison applicable in chronic pain context and finding ALJ erred in rejecting claimant's testimony on the basis of periods of improved pain). In fact, "[o]ccasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability." Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995). Furthermore, "treatment records must be viewed in light of the overall diagnostic record," and it is error for an ALJ to "cherry-pick[]" medical evidence disfavoring a claimant instead of considering such evidence in the context of the record as a whole. Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014).

Here, the ALJ found that "the objective medical findings in the record revealed largely improved findings and/or manageable symptoms with various treatment modalities[.]" AR at 21. The ALJ's finding, however, mischaracterizes the record, which shows that Plaintiff experienced only limited and temporary improvement with treatment:

- Although Plaintiff reported some relief after receiving a lumbar epidural steroid injection in March 2019, he rated his back pain at six out of ten at an April 2019 appointment just one month later, id. at 267, and rated the pain at seven to eight out of ten at a May 2019 appointment approximately two months later, id. at 264.
- Plaintiff underwent a bilateral lumbar radiofrequency ablation in July 2019 but rated his pain at five out of ten at an appointment in August 2019, just one month later, and further reported the pain was "interfering in function, [activities of daily living] and sleep." Id. at 262.
- In November 2019, Plaintiff received a lumbar epidural steroid injection that initially reduced his pain to a two to four out of ten, id. at 253, but at a January 2020 appointment, just two months later, he rated his back pain at five to seven of ten, id. at 313.

- Although Plaintiff reported "50% relief" five days after undergoing a lumbar radiofrequency ablation in February 2020, id. at 311, Plaintiff rated his back pain at seven out of ten at an appointment in March 2020, just over a month later, id. at 309. At the March 2020 appointment, Plaintiff also reported the pain had decreased his ability to perform activities of daily living "such as running errands and going to the restroom." Id.
- Plaintiff received another lumbar epidural steroid injection in June 2020, but he reported less than one month later that his pain level was "back to 7/10." Id. at 295, 298.
- At an appointment in November 2020, less than three weeks after undergoing another radiofrequency ablation, Plaintiff rated his pain at a five to six out of ten. Id. at 283.
- While a January 2021 lumbar epidural steroid injection initially reduced Plaintiff's pain to three out of ten, id. at 333, 386-91, Plaintiff reported in March 2021, less than two months after the procedure, that his pain had increased to four out of ten, id. at 330, and he reported in April 2021, less than three months after the procedure, that his pain had increased to seven out of ten, id. at 327.
- While an April 2021 radiofrequency ablation initially reduced Plaintiff's pain to four out of ten, id. at 321, 360-65, Plaintiff reported in July 2021, less than two months after the procedure, that his pain was "worsening" and had increased to five to seven out of ten, id. at 316.

The record is, therefore, consistent with Plaintiff's hearing testimony that epidural injections and radiofrequency ablation provided only temporary relief. Id. at 40, 46.

Moreover, despite his use of narcotic pain medication throughout the relevant period, Plaintiff consistently reported pain that interfered with his activities of daily living and increased with prolonged sitting, walking, and standing. Id. at 253, 256, 259, 262, 264, 267, 278, 283, 287, 291, 295, 298, 302, 305, 309, 311, 313, 316, 321,

11

324, 327, 336.  In addition, objective examinations at in-person appointments consistently showed stiffness, tenderness, and "very limited" range of motion at Plaintiff's lumbar spine.  Id. at 254, 257, 260, 262, 264, 267, 306, 309, 311, 313.  Thus, the record establishes that Plaintiff's symptoms persisted despite his limited improvement with treatment.

Accordingly, because substantial evidence does not support the ALJ's finding that Plaintiff's limited and temporary improvement with treatment is inconsistent with his testimony, Plaintiff's purported improvement with treatment does not constitute a "specific, clear, and convincing reason[]" for rejecting Plaintiff's subjective complaints of physical impairment.  Trevizo, 871 F.3d at 679.

**2.      Lack of Surgery**

The ALJ also appears to have relied on the fact that Plaintiff has not undergone surgery in rejecting Plaintiff's subjective complaints of physical impairment.  AR at 21.  Plaintiff's lack of surgery, however, does not constitute a convincing reason supported by substantial evidence for rejecting his subjective complaints.

Evidence of conservative treatment may be relevant to evaluating a claimant's subjective impairment testimony.  See Parra, 481 F.3d at 750-51.  Nonetheless, conservative treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

Here, the ALJ found Plaintiff underwent "various treatment modalities that did not reach the level of surgical intervention[.]"  AR at 21.  First, to the extent this finding amounted to a conclusion that Plaintiff received only conservative treatment, such a conclusion is not supported by substantial evidence.  During the relevant period, Plaintiff was prescribed oxycodone,[5] id. at 253, 256, 259, 262, 264, 267, 279,

---

[5] "Oxycodone is a narcotic pain medication used to treat moderate to severe pain." Dixon v. Berryhill, No. CV 16-5844-JPR, 2018 WL 354581, at *4 n.9 (C.D. Cal. Jan. 10, 2018).

12

1  281, 284, 287, 291, 295, 299, 302, 305, 308, 309, 311, 313, 316, 321, 325, 327, 331,
2  334, 337, and received multiple lumbar epidural steroid injections, id. at 253, 267, 298,
3  347-52, 386-91.  Epidural steroid injections are not conservative treatment.  See
4  Garrison, 759 F.3d at 1015 n.20 ("[W]e doubt that epidural steroid shots to the neck
5  and lower back qualify as 'conservative' medical treatment.").  Furthermore, courts
6  have declined to characterize treatment plans like Plaintiff's consisting of not only
7  repeated epidural injections but also narcotic pain medication as conservative.  See
8  Christine G. v. Saul, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) ("Many courts have
9  previously found that strong narcotic pain medications and spinal epidural injections
10  are not considered to be 'conservative' treatment."); see also Christie v. Astrue, No.
11  CV 10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (finding that,
12  while treatment modalities such as narcotic pain medication and steroid injections
13  "may not be the most aggressive available," they do not constitute "conservative"
14  treatment).

15  Second, the record does not establish that more aggressive treatment
16  modalities, including surgery, were appropriate for, or available to, Plaintiff.  Given
17  that – as the ALJ noted – no provider recommended surgery to treat Plaintiff's
18  impairments, it was error for the ALJ to reject Plaintiff's testimony on the basis of his
19  failure to seek surgery.  See Carmickle, 533 F.3d at 1162 (holding conservative
20  treatment "is not a proper basis for rejecting the claimant's credibility where the
21  claimant has a good reason for not seeking more aggressive treatment"); see also
22  James S. v. Saul, No. CV 18-3852-KS, 2019 WL 13062682, at *12 (C.D. Cal. July 5,
23  2019) ("[I]f Plaintiff was not recommended for surgery, then the ALJ cannot fault him
24  for failing to seek that treatment." (emphasis in original)).  In light of this record, it
25  was improper for the ALJ to draw her own inference regarding whether such
26  treatment was appropriate for or available to Plaintiff.  See Marrical v. Berryhill, No.
27  EDCV 16-00398-RAO, 2017 WL 4877265, at *6 (C.D. Cal. Oct. 27, 2017) (finding
28  ALJ erred in relying on claimant's lack of surgery to reject her testimony where "there

[wa]s no evidence in the record that more frequent or aggressive treatment was available to treat Plaintiff's conditions, and the ALJ was not qualified to draw her own inference regarding whether such treatment was available").

Accordingly, Plaintiff's lack of surgery does not constitute a "specific, clear, and convincing reason[]" for rejecting his subjective complaints of physical impairment. Trevizo, 871 F.3d at 679.[6]

### 3. The ALJ's Error Was Not Harmless

Finally, the ALJ's error in rejecting Plaintiff's subjective complaints of physical impairment was not harmless, because it is not "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted). Plaintiff testified that, due to his back pain, he cannot sit for more than twenty minutes, stand for more than five minutes, or lift more than five pounds. AR at 43-44. The vocational expert at the hearing on Plaintiff's application did not testify that a person with Plaintiff's vocational background and these alleged limitations would be able to perform work in the national economy. See id. at 46-51. In fact, the vocational expert testified that no work would be available to a hypothetical individual with Plaintiff's vocational background who needed a five-minute break every hour due to pain. Id. at 50-51. Based on this record, the Court cannot conclude the error in rejecting Plaintiff's subjective complaints of physical

---

[6] The Commissioner argues the ALJ additionally relied on "[o]bjective medical evidence featuring generally 'mild' diagnostic laboratory findings" in rejecting Plaintiff's subjective complaints. See dkt. 20 at 14. While the ALJ summarizes Plaintiff's medical history, including diagnostic imaging results, see AR at 22, the ALJ does not cite Plaintiff's imaging results as a basis for rejecting his subjective complaints. See Lambert v. Saul, 980 F.3d 1266, 1268 (9th Cir. 2020) ("[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (quoting Brown-Hunter, 806 F.3d at 494) (emphasis in original)). Because the Court "may not affirm the ALJ on a ground upon which [s]he did not rely," Orn, 495 F.3d at 630, the Court rejects the Commissioner's argument. Moreover, "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise." Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (holding ALJ cannot reject subjective complaints "based solely on a lack of medical evidence to fully corroborate the alleged severity of pain").

14

impairment was harmless.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."); see also Sibrian v. Berryhill, No. EDCV 18-1090-E, 2019 WL 932479, at *6 (C.D. Cal. Feb. 26, 2019) (finding ALJ's error in rejecting plaintiff's testimony not harmless where vocational expert "did not testify there are jobs performable by a person as limited as Plaintiff claims to be").

## VIII.
## RELIEF

### A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Hill, 698 F.3d at 1162 (citation omitted).  "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed."  Id. (citation omitted).  "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."  Id. (citations omitted); cf. Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

### B. ANALYSIS

The record has not been fully developed in this matter.  The ALJ must properly consider Plaintiff's subjective complaints of physical impairment.  If the ALJ decides Plaintiff's subjective complaints must again be rejected, the ALJ must provide

1 sufficient reasons supported by substantial evidence for making such a determination.
2 See Hill, 698 F.3d at 1162.  Accordingly, remand for further proceedings is
3 appropriate.

**IX.**

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: April 3, 2023

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge